UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Gilbert Cortez,<br>　　　*Plaintiff*,<br><br>　　　　　*v.*<br><br>State of Connecticut, Department of Transportation,<br>　　　*Defendant*. | Civil No. 3:07cv208 (JBA)<br><br><br><br>January 16, 2009 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Gilbert Cortez brings this action against the Connecticut Department of Transportation ("DOT"), his former employer, alleging gender and race discrimination, retaliation, and constructive discharge. The Defendant has moved for summary judgment on all counts. Because no rational trier of fact could find for the Plaintiff on this record, the Court grants the Defendant's motion.

I.　　**Factual Background**

As it must, the Court views the record in the light most favorable to Cortez as the non-moving party, with all inferences drawn in his favor. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir.1994). The Court's review of the record is complicated, however, by the Plaintiff's failure to comply with Local Civil Rule 56(a)2, which directs the party opposing summary judgment to "state[] in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3 and corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied." The Defendant rightly objects that the Plaintiff, rather than admitting or denying the supposedly undisputed statements of fact, instead responded by saying he "is without knowledge" or "neither admits nor denies"

various facts.  These deficiencies notwithstanding, "this Court must be guided by the substance of the record submitted in support and 'may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56[] statement,'" and so "[t]he facts which the defendants assert to be undisputed will therefore be taken as true if supported by the record." *Vaden v. Conn.*, 557 F. Supp. 2d 279, 285 (D. Conn. 2008) (quoting *Vt. Teddy Bear Co. v. 1-800-Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)).  The relevant facts are as follows.

Cortez, a sixty-four-year-old Hispanic man, began working for DOT on February 4, 2005 as an Affirmative Action Officer within the contract-compliance division.  According to a July 2005 job evaluation by Diane Donato, the director of the office, Cortez generally met expectations but needed improvement with his writing skills.  Around the same time, Cortez applied for an open program-manager position within the same division.  Donato assembled a diverse panel of experienced state employees to interview candidates, and the panel subsequently interviewed Cortez as well as an African-American co-worker, Debra Goss.  According to the recommendation it submitted to Donato, the panel preferred Goss because of her "excellent working knowledge" of the division, her "ten years' experience working on Title VI" matters, her "[c]learly stated knowledge" of federal and state agencies, and her "[c]lear[] articulat[ion] of her vision and passion." (Arpin Aff., Ex. C.)  By contrast, the panel described Cortez's interview less favorably: "Candidate's responses were all too general and lacked specificity.  Did not demonstrate adequate knowledge of Title VI, inter-relationship of ConnDOT with other State and Federal agencies.  Did not demonstrate a grasp of program areas of contract compliance." (*Id.*)  Based on the panel's recommendation, the program-manager position was offered to Goss, who started in her

new role in September 2005.

In August 2005, Cortez was identified in a CHRO complaint filed by one Ms. Cordula against DOT.  In September 2005, Cortez went on leave for three months, during which time his work was reassigned to co-workers including Goss.  Cortez filed a complaint with the CHRO in October 2005 claiming discrimination in connection with the Goss promotion.  (He received a right-to-sue letter in November 2006.)

When Cortez returned to work at DOT in December 2005, Goss tasked him with work seemingly typical for the division, although he perceives that his responsibilities were reduced.  Later, in March and July 2006, performance reviews indicated that Cortez continued to have problems producing error-free written work.  In particular, letters sent to contractors and members of the public contained grammatical and typographical errors.

On July 24, 2006, DOT posted a vacancy for an Affirmative Action Officer position within another division responsible for the DOT's internal compliance programs.  Prompted by Donato, Cortez applied for this position and was interviewed by a diverse panel comprised of other state employees.  After interviewing several candidates, the panel recommended Nancy Bryant, a white woman, who received a good review emphasizing her experience and qualifications.  Cortez, by contrast, was described by the panel as "not proficient" in computing software, and the panel also noted that his "writing sample contained grammatical errors."  (Arpin Aff., Ex. H.)  Bryant got the job.

Cortez initiated this action in February 2007, and later amended his complaint twice to allege discrimination, retaliation, and constructive discharge.

## II.    Discussion

### A.    Standard

Summary judgment is appropriate where the record after discovery "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if it could lead "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, a moving defendant "need not prove a negative," but "need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'"  *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  If "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," then there is an issue for trial and summary judgment must be denied.  *Anderson*, 477 U.S. at 249.  But if the evidence, viewed in the light most favorable to the nonmoving party, "could not lead a rational trier of fact to find for [that] nonmoving party, there is no genuine issue for trial," and summary judgment should follow.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quotation marks omitted).

### B.    Discrimination on the Basis of Gender and Race

Cortez alleges that DOT discriminated against him on the basis of his gender and

race, in violation of Title VII of the Civil Rights Act of 1964.[1]  The record is analyzed according to the *McDonnell Douglas* burden-shifting framework, under which Cortez first must establish a prima facie case of discrimination.  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).  To do so, he must prove:  (1) membership in a protected class; (2) qualification for his position; (3) an adverse employment action; and (4) circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class.  *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  If Cortez establishes a prima facie case, the burden shifts to DOT to articulate "a legitimate, nondiscriminatory reason" for the adverse employment actions, which is a burden "of production, not persuasion," and can "involve no credibility assessment."  *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 142 (2000) (internal citations, quotations, and alterations omitted).  Defendant's burden is satisfied if the proffered evidence, "'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'"  *Schnabel v. Abramson*, 232 F.3d 83, 88 (2d Cir. 2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).  "Although the burden of production shifts to the defendant, the ultimate burden of persuading the trier of fact of intentional discrimination remains at all times with the plaintiff."  *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997).

If DOT articulates a legitimate, race-neutral basis for the adverse employment actions, the burden then shifts back to Cortez to "come forward with evidence that

---

[1] Although the amended complaint references the Connecticut Fair Employment Practices Act ("CFEPA") as an additional basis for liability, Plaintiff clarified at oral argument that his claims are brought pursuant to Title VII only.

[Defendant's] proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock*, 224 F.3d at 42. Cortez "may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence." *Reeves*, 530 U.S. at 143. Thus, he can survive summary judgment only by showing that his prima facie case, coupled with sufficient evidence to find that DOT's proffered justification is pretextual, would support the inference that the true reason for the challenged employment action was discriminatory. *Id.* at 148.

Plaintiff's second amended complaint alleges that Defendant discriminated against him by failing to promote him to the program-manager position in 2005 and by hiring the less-qualified Goss instead. DOT first argues that Cortez has not made out a prima facie case of discrimination because "he cannot establish that he was not promoted to Affirmative Action Program Manager under circumstances giving rise to an inference of discrimination." (Def.'s Mem at 11.) But because the different steps of the *McDonnell Douglas* analysis can "tend to collapse as a practical matter," *Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 n.1 (2d Cir. 2002), the Court will assume for the sake of argument that Cortez has met his initial burden and turn to the question of whether DOT's proffered justification could be found pretextual.

DOT maintains that its decision to promote Goss rather than Cortez was entirely non-discriminatory. The four-member panel charged with interviewing candidates concluded that Goss was more qualified than Cortez owing to her strong verbal skills, working knowledge of agency issues, and writing ability. There is no evidence in the record suggesting that this process reflected any discrimination on account of Cortez's race or gender. This legitimate, non-discriminatory reason—that is, merit—is contradicted by

nothing other than Cortez's own subjective belief that he was discriminated against, which is not a sufficient reason to deny summary judgment.  Thus, even assuming that Cortez can establish an initial inference that he was treated unlawfully because the job went to a black woman, he has offered no evidence which shows that the panel's recommendation was merely a pretext for discrimination.

Because no reasonable jury could find in Plaintiff's favor on his discrimination claims, summary judgment must be granted as to counts one and two.

### C.     Retaliation

Cortez alleges that DOT also violated Title VII by retaliating against him.  A plaintiff alleging retaliation must initially establish a prima facie case by showing that he was engaged in a protected activity, that his employer was aware of this activity, that he was subject to an adverse employment action, and that there was a causal connection between his protected activity and the adverse action.  *Collins*, 305 F.3d at 118.  To demonstrate that he engaged in a protected activity, Plaintiff must show that he "had a good faith, reasonable belief that the underlying employment practice was unlawful."  *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (quotation marks omitted).  The causation element can then be proven "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).  Alternatively, causation may be satisfied by showing a sufficiently close temporal connection between the protected activity and the adverse action.  But "[t]he cases that accept mere temporal proximity

between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close,'" which ordinarily means closer in time than a few months. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Cortez cites several potential adverse actions by DOT: failing to promote him to program manager in 2005; reducing his job responsibilities after he returned from leave; giving him a poor evaluation in July 2006; failing to transfer him to the internal division in July 2006; and denying him a bonus. Simply being identified in a CHRO complaint is not "protected activity" for the purpose of making out a prima facie case of retaliation, and so the starting point for the analysis is October 2005, when Cortez filed his own CHRO complaint against DOT. Because Cortez interviewed for and failed to land the program-manager promotion earlier in 2005, that cannot be a retaliatory action.

Plaintiff argues that his work duties were "drastically reduced" when he returned from leave in late 2005, but he does not specify what he means by this. The record demonstrates that affirmative-action officers in the contract-compliance division are charged with, among other things, reviewing the affirmative-action plans of contractors doing business with DOT and determining eligibility for the Disadvantaged Business Enterprise program. The undisputed facts show that this is what Cortez's job entailed both before and after his three-month leave. In addition, Cortez testified in his deposition that the alleged reduction in work actually began before he went on leave, on September 13, 2005 (Cortez Dep. Tr. 13:13–24), which means that any change in his job responsibilities could not have been a retaliatory response to either his taking leave or filing a CHRO complaint.

The only other examples of retaliation occurred much later, in mid-2006. Assuming

for the sake of argument that they were sufficiently adverse, *see Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006), Plaintiff has offered no evidence to support a causal connection to his extended leave and CHRO complaint more than half a year earlier. As above, DOT has offered legitimate, non-discriminatory reasons for its actions, and here Cortez has not countered that with any evidence showing DOT's justifications are merely pretextual for unlawful retaliation. In particular, the premise for the most adverse of these allegedly retaliatory actions—Cortez's unsuccessful interview for the affirmative-action position in DOT's internal division—is undercut by the undisputed evidence and Cortez's own deposition. Central to the July 2006 panel's negative evaluation was its view that Cortez's writing skills were inadequate, a finding amply supported by evidence in the record of actual letters sent by Cortez which contained grammatical and typographical errors. Plus, Cortez explained in his deposition testimony the precise reason he believes the hiring process was unfair:

> Q:    Just so I understand: The position—the Nancy Bryant position, do you have any reason to believe that the three panel members discriminated against you? . . .
>
> A:    I believe Ms. Bryant was already pre-selected, okay. She came from the Department of Administrative Services. Before that she was with UConn as an administrative assistant, then later to an affirmative action associate. Worked with Ms. Donato over at the Department of Administrative Services, got very acquainted. And I really believe that Ms. Donato wanted Ms. Bryant to be in that position.

(Cortez Dep. Tr. 27:1–15.) Even if proven, this would not be unlawful retaliation: seeking out Bryant because of a personal preference or favoritism would be inconsistent with the notion that Cortez was denied the job as retaliation for some protected activity months earlier.

In short, there is no evidence in the record of any causal connection between what Cortez offers as protected activity and what he claims constituted retaliatory actions by DOT.  Thus, summary judgment must be granted as to count three.

### D.    Constructive Discharge

Cortez's final claim is that he was constructively discharged.  "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Terry v. Ashcroft*, 336 F.3d 128, 151–52 (2d Cir. 2003).  Whether working conditions rise to this level generally depends on two inquiries: "the employer's intentional conduct and the intolerable level of the work conditions."  *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004).  The first inquiry may be satisfied by proof that "employers acted with the specific intent to prompt employees' resignations," and the second inquiry "is assessed objectively by reference to a reasonable person in the employee's position."  *Id.* at 229-30.  To establish a prima facie case, Plaintiff must show that the discharge or harassment "occurred in circumstances giving rise to an inference of discrimination on the basis of [his] membership" in a protected class.  *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996).

There is no evidence supporting any of these elements of a constructive-discharge claim.  Cortez argues that "Plaintiff's superiors effectively removed the Plaintiff's job duties, created a hostile workplace and effectively conspired to deny him deserved promotional possibilities; thus forcing him to work in an environment where it was apparent he was no longer wanted."  (Pl.'s Opp'n at 11.)  But these conclusory contentions are unsupported by any facts in the record.  Except for his own subjective reactions and beliefs, Cortez has proffered no evidence from which a jury could conclude that his working conditions were

objectively intolerable or that DOT acted with the intent to create a hostile environment. With this complete absence of proof, summary judgment must be granted on count four.

**III.     Conclusion**

Accordingly, Defendant's Motion for Summary Judgment [Doc. # 34] is granted. The Clerk is directed to close this case.


IT IS SO ORDERED.


_____/s/_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 16th day of January, 2009.

11